CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 1 2 2018

JULIA C. DUDLEY, CLERK
BY: /s/ [signature]
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TORREY LAVELL WASHINGTON, ) | Civil Action No. 7:16-cv-00476 | |
|     Plaintiff, ) | | |
| ) | | |
| v. ) | MEMORANDUM OPINION | |
| ) | | |
| TERRY MCAULIFFE, et al., ) | By:   Hon. Michael F. Urbanski | |
|     Defendants. ) |       Chief United States District Judge | |

Torrey Lavell Washington, a Virginia inmate proceeding pro se and as a pauper under 28 U.S.C. § 1915, filed an amended verified complaint (ECF No. 25-1) pursuant to 42 U.S.C. §§ 1983 and 2000cc-1, et seq., and Virginia law.[1] Plaintiff names as defendants: the Governor of Virginia, the Secretary of Public Safety of Virginia, the Director of the Virginia Department of Corrections ("VDOC"), various staff of the VDOC, and three employees of Keefe Commissary Network, LLC. The defendants associated with Keefe Commissary Network, LLC ("Keefe defendants") filed a motion to dismiss, and the defendants associated with Virginia ("state defendants") filed a motion for summary judgment, arguing, inter alia, the defense of qualified immunity.[2] Plaintiff responded to each motion, and this matter is ripe for disposition. After reviewing the record, the court grants the Keefe defendants' motion to dismiss, grants in part and denies in part the state defendants' motion for summary judgment, and directs the state defendants to file a motion for summary judgment.

I.

Plaintiff is an observant Rastafarian. One important tenet of his faith is to grow his hair uncut and styled in dreadlocks. Another important tenet is to not consume foods containing an

---

[1] Prior to filing the amended verified complaint, Plaintiff had filed a motion to amend (ECF No. 19) that he subsequently withdrew (ECF No. 20). Consequently, the court dismissed the motion to amend (ECF No. 22), and that contents of the withdrawn motion to amend are not before the court.

[2] The court previously granted a protective order about discovery based on this defense. See, e.g., Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1185 (10th Cir. 2001).

animal product, including egg. Plaintiff has received the VDOC's Common Fare Menu ("Common Fare") since 2014. Common Fare is a religious diet for inmates whose religious dietary needs cannot be met by foods served on the Master Menu.

The VDOC has confined Plaintiff in several prisons. Plaintiff was at Nottoway Correctional Center ("Nottoway") from June to August 2014, was at River North Correctional Center ("River North") from August 2014 to April 5, 2016, and has been at Wallens Ridge State Prison ("WRSP") since April 5, 2016. Plaintiff's claims concern his experiences at these three prisons until he commenced this action no earlier than September 28, 2016.

### A.

Plaintiff presents five broad issues about the treatment of his religious beliefs and living conditions in the VDOC since 2014. Plaintiff seeks damages and declaratory and equitable relief.

First, an unidentified correctional officer forcibly cut Plaintiff's dreadlocks at Nottoway on June 3, 2014. Plaintiff had objected at the time, explaining that he had grown his hair uncut for five years in accordance with his religious beliefs. Plaintiff argues that the haircut violated federal and state rights.

Second, VDOC Operating Procedure ("OP") 864.1 unlawfully forces him to live in unduly restrictive conditions of confinement.[3] Plaintiff complains that inmates who grow their hair for religious purposes must be placed in segregation for failing to comply with OP 864.1's grooming standards. Plaintiff alleges he was held in segregation for nearly eight months at River North and then moved to WRSP's Violator Housing Unit ("Hair Pod"), which is a special

---

[3] The parties cite to the version of the OP effective August 1, 2016. Thus, the court considers that version only.

2

housing unit for inmates who refuse to cut their hair. Inmates in Phase I of the Hair Pod have more restrictive conditions of confinement than inmates in Phase II or in General Population. Plaintiff "started experiencing Schizophrenia, [b]ipolar disorder, PTSD, [and] IIED" from these more restrictive conditions.

Plaintiff further complains that OP 864.1 allows female inmates to have their hair longer and styled in ponytails but does not allow the same for male inmates.[4] Plaintiff believes that the prohibited hair styles, including dreadlocks, target people of African descent in violation of "Freedom of Expression," the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the Free Exercise Clause, the Equal Protection Clause, and Section 16 in Article I of the Virginia Constitution.

Third, WRSP kitchen staff serves or has served inadequate portions, old food, and egg to coerce and punish Hair Pod inmates. Plaintiff complains that WRSP kitchen staff and defendant Gregg, who is the VDOC Dietician, do not allow a substitute for egg in Rastafarians' foods although they allow substitutes for pork in Muslims' foods. Plaintiff explains that the VDOC used to serve a "Rastafarian Menu" but it has the alleged distinction of being the only menu ever discontinued by the VDOC. Plaintiff further complains that defendants King, Collins, Cooke, and Collins are liable because "correctional officers are not doing their describe[d] jobs" to report inadequate food portions or incorrect menu items to kitchen staff. Plaintiff believes these issues about food violate RLUIPA, the Cruel and Unusual Punishments Clause, the Equal Protection Clause, and Section 16 in Article I of the Virginia Constitution.

Fourth, Keefe Commissary does not inform VDOC inmates which items available for purchase contain egg although it informs inmates which products are Kosher and Halal. Plaintiff

---

[4] Yet, Plaintiff acknowledges that male and female inmates are not supposed to have dreadlocks.

3

believes that defendants O'Quinn, Witt, and Randolph, who are or were Managers of the Keefe Commissary at WRSP, River North, and Nottoway, respectively, are responsible for marking products as Kosher and Halal. Consequently, Plaintiff believes O'Quinn's, Witt's, and Randolph's failures to mark products as containing egg violate religious rights, the Cruel and Unusual Punishments Clause, and the Equal Protection Clause.

Lastly, WRSP staff Ravizee, Combs, and Fleming and VDOC staff Elam and Bivens allow these civil rights violations to occur by "not letting the grievance process go all the way through." For example, Plaintiff complains that Ravizee, as the WRSP Grievance Coordinator, rejected grievances as repetitive despite them allegedly being about different issues. Consequently, Plaintiff believes that Ravizee, Combs, Fleming, Elam, and Bivens are liable for "covering up" the other alleged civil rights violations.

## II.
### A.

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a plaintiff fails "to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient "facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555.

A court must construe factual allegations in the nonmoving party's favor and treat them as true, but it is "not so bound with respect to [a complaint's] legal conclusions." Dist. 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp., 609 F.2d 1083, 1085 (4th Cir. 1979). A court will accept neither "legal conclusions drawn from the facts" nor "unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd.

P'ship, 213 F.3d 175, 180 (4th Cir. 2000). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Only after a claim is stated adequately may it then "be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563.

### B.

A party is entitled to summary judgment if the pleadings, the disclosed materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. Id. at 322-24. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A plaintiff cannot use a response to a motion for summary judgment to amend or correct a complaint challenged by the motion for summary judgment. Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009).

**C.**

A government official sued under § 1983 may invoke qualified immunity as a defense in an individual capacity. Cooper v. Sheehan, 735 F.3d 153, 158 (4th Cir. 2013) (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The doctrine of qualified immunity 'balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). The "qualified immunity analysis typically involves two inquiries: (1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." Raub v. Campbell, 785 F.3d 876, 881 (4th Cir. 2015); see In re Allen, 106 F.3d 582, 593 (4th Cir. 1997) ("[A]n official may claim qualified immunity as long as his actions are not clearly established to be beyond the boundaries of his discretionary authority."). A "court may address these two questions in the order . . . that will best facilitate the fair and efficient disposition of each case." Estate of Armstrong v. Vill. of Pinehurst, 810 F.3d 892, 898 (4th Cir. 2016) (internal quotation marks omitted). A plaintiff's claim "survives summary judgment, however, only if [the court] answer[s] both questions in the affirmative." Id.

**D.**

1. RLUIPA and the Free Exercise Clause

An inmate's right to religious exercise must be balanced with a prison's institutional needs of security, discipline, and general administration. Cutter v. Wilkinson, 544 U.S. 709, 722 (2005); O'Lone v. Estate of Shabazz, 482 U.S. 342, 348-49 (1987). RLUIPA affords heightened

protection to a prisoner's religious exercise, whereas the First Amendment's Free Exercise Clause is more deferential to prison official's decisions impacting religious exercise.

RLUIPA prohibits government officials from imposing a substantial burden on the religious exercise of an inmate unless the government demonstrates that the burden furthers a compelling governmental interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-1(a). "The least-restrictive-means standard . . . requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party." Jehovah v. Clarke, 798 F.3d 169, 177 (4th Cir. 2015) (quoting Holt v. Hobbs, 135 S. Ct. 853, 864 (2015)).

In contrast, a correctional regulation or management decision that substantially burdens an inmate's First Amendment right is valid if it is reasonably related to legitimate penological interests. Lovelace v. Lee, 472 F.3d 174, 199 (4th Cir. 2006). Whether a regulation is reasonably related depends on:

> (1) [W]hether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right ... remain open to prison inmates," an inquiry that asks broadly whether inmates were deprived of all forms of religious exercise or whether they were able to participate in other observances of their faith; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns.

Id. at 200 (citing Turner v. Safley, 482 U.S. 78, 89-92 (1987)); see Overton v. Bazzetta, 539 U.S. 126, 132 (2003) (recognizing the prisoner has the burden to disprove the validity of a prison regulation pursuant to the Turner analysis). A "substantial burden" on religious exercise occurs under the First Amendment or RLUIPA if it "put[s] substantial pressure on an adherent to

7

modify his behavior and to violate his beliefs, or . . . forces a person to choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand."[5] Lovelace, 472 F.3d at 187; see, e.g., Patel v. Bureau of Prisons, 515 F.3d 807, 814 (8th Cir. 2008) ("When the significance of a religious belief is not at issue, the same definition of 'substantial burden' applies under the Free Exercise Clause . . . and RLUIPA.").

A claim under either RLUIPA or the First Amendment requires showing a defendant's conscious or intentional interference with the plaintiff's religious rights. Wall v. Wade, 741 F.3d 492, 500 n.11 (4th Cir. 2014). "Allowing negligence suits to proceed under RLUIPA [or the First Amendment] would undermine . . . deference [to the experience and expertise of prison and jail administrators] by exposing prison officials to an unduly high level of judicial scrutiny." Lovelace, 472 F.3d at 194; see Shaheed v. Winston, 885 F. Supp. 861, 868 (E.D. Va. 1995), aff'd, 161 F.3d 3 (4th Cir. 1998). Consequently, less than intentional conduct is not sufficient to meet the fault requirements under RLUIPA or the First Amendment.

2.  The Cruel and Unusual Punishments Clause

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The Eighth Amendment imposes a duty on prison officials to "provide humane conditions of confinement . . . [and] ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994). For claims based on conditions of confinement, an inmate must prove that, objectively, he experienced a deprivation of a basic human need exposing him to a substantial risk of serious harm. De'Lonta v. Johnson,

---

[5] The court assumes for purposes of this opinion that Plaintiff's purported religious beliefs are personal practices that are both sincerely held and rooted in religious belief. See, e.g., Cutter, 544 U.S. at 725; see also 42 U.S.C. § 2000cc-5(7) (defining "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief").

708 F.3d 520, 525 (4th Cir. 2013). The inmate must also prove that, subjectively, a state actor acted with deliberate indifference. Id. Deliberate indifference means a state actor was personally aware of facts indicating a substantial risk of serious harm and must have actually recognized the existence of such a risk. Farmer, 511 U.S. at 838.

3. The Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amendment generally requires the government to treat similarly situated people alike. City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439-41 (1985). It "does not take from the States all power of classification, but keeps governmental decision makers from treating differently persons who are in all relevant respects alike." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation marks and citations omitted). Thus, to prove an equal protection claim, an inmate "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination" on the basis of the plaintiff's membership in a protected class, such as race, gender, or religion. Id. (internal quotation marks omitted). The plaintiff must next show that the policy is not reasonably related to legitimate penological interests. Id. at 732. This element requires the inmate to "allege facts sufficient to overcome the presumption of reasonableness applied to prison policies." Id. Once this showing is made, the burden shifts to a defendant to show the disparity is not an exaggerated response to a particular concern. Morrison v. Garraghty, 239 F.3d 648, 654-55 (4th Cir. 2001).

### III.

The Keefe defendants filed a motion to dismiss, arguing that the complaint fails to state a plausible claim against them. Plaintiff alleges that the Keefe defendants "tricked" him into

9

purchasing commissary products containing egg. Plaintiff complains that he cannot tell which items for sale in the commissary contain egg until after he buys them and reads their ingredients. Consequently, Plaintiff feels compelled to discard items purchased from the commissary. Plaintiff argues that the lack of egg labeling and egg substitutes violates RLUIPA, the Free Exercise Clause, the Cruel and Unusual Punishments Clause, and the Equal Protection Clause. Because Plaintiff fails to effectively allege that the Keefe defendants violated federal law while under color of state law, the Keefe defendants' motion to dismiss must be granted.

Plaintiff fails to plead sufficient facts describing the Keefe defendants' personal act or omission under color of state law. Foremost, Plaintiff does not explain how his voluntary purchases from a private company for sundries constitute activity "fairly attributable to the state." See, e.g., Smith v. Ozmint, No. CA 9:07-3644-PMD-BM, 2009 U.S. Dist. LEXIS 19741, at *8-12, 2009 WL 692828, at *3-4 (D.S.C. Mar. 12, 2009) (finding that a company which produced hygiene products for sale to prison commissaries did not act under color of state law and stating that "the mere act of selling something to a government entity to be distributed to inmates does not render the manufacturer or distributor state actors"), aff'd, 356 F. App'x 646 (4th Cir. 2009); see also Ahlgrim v. Keefe Grp LLC, No. CV 16-00177 JB/GJF, 2016 U.S. Dist. LEXIS 166006, at *9, 2016 WL 9819520, at *3 (D.N.M. Oct. 19, 2016), adopted by 2016 U.S. Dist. LEXIS 165025, 2016 WL 7246110 (D.N.M. Nov. 30, 2016); Kyles v. Keefe Commissary Network, LLC, No. CV 14-11907, 2015 U.S. Dist. LEXIS 49152, at *4, 2015 WL 1637466, at *6 (E.D. Mich. Mar. 24, 2015), adopted by 2015 U.S. Dist. LEXIS 47997, 2015 WL 1637466 (E.D. Mich. Apr. 13, 2015); Horen v. Commonwealth, 23 Va. App. 735, 742, 479 S.E.2d 553, 556 (1997) (recognizing § 16 in Article I of the Virginia Constitution requires a state actor and a substantial burden).

Plaintiff also fails to explain how the Keefe defendants substantially burdened his religious exercise. His commissary purchases were optional and discretionary, and he does not demonstrate how the Keefe defendants "pressured" or "forced" him to make the voluntary purchases, even if a purchase could constitute a "substantial burden," or "pressured" or "forced" him to consume egg. Cf. Lovelace, 472 F.3d at 187 (noting a "substantial burden" means substantially pressuring someone to violate religious beliefs); Horen, supra. Plaintiff further fails to allege how the Keefe defendants have any involvement or responsibility for labeling food products sold in the commissary. See id. at 194 (noting anything less than intentional conduct to violate a religious right is insufficient). Inmates do not have a federal constitutional right to purchase items from a commissary, and thus, a claim about labeling on items purchased from a commissary is not actionable via § 1983. See, e.g., Tokar v. Armontrout, 97 F.3d 1078, 1083 (8th Cir. 1996).

Plaintiff further fails to allege how having access to a commissary constitutes the imposition of cruel and unusual punishment. See, e.g., id. ("[W]e know of no constitutional right of access to a prison gift or snack shop."). Mistakenly purchasing an item or experiencing buyer's remorse does not objectively constitute a deprivation of a basic human need.

Plaintiff's failure to plead sufficient facts about the Keefe defendants is fatal to these claims. Accordingly, the Keefe defendants' motion to dismiss is granted.

## IV.

The state defendants present two affirmative defenses to the forced haircut claim: the statute of limitations and the administrative exhaustion requirement. The court finds that both defenses apply and grants the state defendants' motion for summary judgment as to this claim.[6]

### A.

Plaintiff alleges that, in June 2014, a correctional officer forcibly cut his hair over his religious objection, but Plaintiff did not commence this action until September 2016. A plaintiff bringing a civil rights action under § 1983 for events arising in Virginia must do so within two years from the time when his action accrues. See Owens v. Okure, 488 U.S. 235, 239-40 (1989); Va. Code § 8.01-243(a). A federal cause of action accrues when "the plaintiff has a complete and present cause of action" or when the plaintiff "can file suit and obtain relief." Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201 (1997) (internal quotation marks omitted). Plaintiff had a complete and present cause of action about the forced haircut in June 2014. Accordingly, Plaintiff pursued the forced haircut claim more than two years after it accrued, and the claim is barred by the statute of limitations.[7]

### B.

The exhaustion requirement is mandatory and "applies to all inmate suits about prison life[.]" Porter v. Nussle, 534 U.S. 516, 524, 532 (2002). "Proper exhaustion demands

---

[6] The discovery foreclosed by the protective order is not relevant or probative of these defenses, the protective order did not frustrate an ability to argue these defenses applicability, and Plaintiff had not moved for discovery of these matters under Federal Rule of Civil Procedure 56(d).

[7] The state defendants are similarly entitled to summary judgment for any related claims argued under the Virginia Constitution. The face of the complaint reveals any related state law claim is similarly barred by Virginia's statute of limitations and exhaustion requirement. See Va. Code §§ 8.01-230, 8.01-243.2; Locke v. Johns-Manville Corp., 221 Va. 951, 957, 275 S.E.2d 900, 957 (1981) (describing when state law claim accrues); see also Eriline Co. S.A. v. Johnson, 440 F.3d 648, 656 (4th Cir. 2006) (noting limitations defense may be raise sua sponte when it plainly appears on a complaint filed by pauper proceeding under 28 U.S.C. § 1915).

12

compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90 (2006). When a prison provides an administrative grievance procedure, the inmate must file a grievance raising a particular claim and pursue it through all available levels of appeal to "properly exhaust." Id.; Dixon v. Page, 291 F.3d 485, 490-91 (7th Cir. 2002). A defendant has the burden to prove an inmate's failure to exhaust available administrative remedies. Jones v. Bock, 549 U.S. 199, 216 (2007). Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the plaintiff to show, by a preponderance of the evidence, that exhaustion occurred or administrative remedies were unavailable through no fault of the plaintiff. See, e.g., Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

VDOC OP 866.1, titled "Offender Grievance Procedure," provides the administrative remedies for inmates to resolve complaints, appeal administrative decisions, and challenge policies and procedures. The process provides correctional administrators means to identify potential problems and, if necessary, correct those problems in a timely manner. All issues are grievable except issues about policies, procedures, and decisions of the Virginia Parole Board; disciplinary hearing penalties and/or procedural errors; state and federal court decisions, laws, and regulations; and other matters beyond the VDOC's control. Inmates are oriented to the inmate grievance procedure when they enter the VDOC's custody and when they are transferred to other VDOC facilities.

Except in certain circumstances not present here, the inmate must make a good-faith effort to informally resolve the issue by submitting an informal complaint form before filing a regular grievance. If the issue is not informally resolved, the inmate must file a regular grievance within thirty calendar days from the date of the occurrence or incident. If an inmate

13

has been transferred from the facility where the occurrence or incident originated, the inmate should submit the informal complaint and regular grievance to the former facility.

A review of grievance records at Nottoway reveal that Plaintiff did not pursue any administrative remedy about the forced haircut. Although Plaintiff filed a grievance at River North on December 7, 2015, about the forced haircut, the grievance was properly rejected as untimely because Plaintiff filed it approximately eighteen months too late and at the wrong facility.

The record establishes that Plaintiff did not comply with the exhaustion policy, and he fails to establish that remedies were unavailable through no fault of his own. Accordingly, the state defendants are entitled to summary judgment for the forced haircut claim.

V.

As to the individual capacity claims, the state defendants argue the defense of qualified immunity and were granted a protective order until the defense is resolved. Thus, the court considers the defense as a threshold matter. See, e.g., Hunter v. Bryant, 502 U.S. 224, 227 (1991) (noting courts should resolve qualified immunity at the earliest opportunity so defendants do not lose the benefit of the immunity by responding to discovery).

A.

Gregg instituted a VDOC policy or practice in July 2016 to forbid a substitution for egg. Plaintiff has adequately established for purposes of summary judgment that he has a sincere religious need to not eat egg.

Viewing the evidence in a light most favorable to him, Plaintiff sufficiently demonstrates that Gregg's enactment of the policy or practice constitutes a "substantial burden." Common Fare relies on egg to bolster the protein and caloric value of the menu. Common Fare served up

to 17 eggs, 1 and 1/3 cups of egg, and up to 1 and 1/3 cups of "egg-tainted" tuna salad per week in 2017. Omitting egg means that, each month, an inmate foregoes nearly sixty eggs, four cups of egg salad, and nearly three cups of tuna salad. Gregg has not broken down the nutritional value of these servings in the context of daily, weekly, or monthly nutritional requirements. In the absence of that data, the remaining inference is that not eating that volume of eggs causes Plaintiff to forego the necessary nutrition, which also implicates the necessary nutrition guaranteed to prisoners by the Cruel and Unusual Punishments Clause.

The analysis under RLUIPA and the Free Exercise Clause presently skew in Plaintiff's favor. Gregg presently fails to establish that not offering egg substitute is the least restrictive means of a compelling governmental interest for RLUIPA or is otherwise reasonably related to legitimate governmental interests under Turner even if Plaintiff has alternative means of exercising his Rastafarian beliefs. The egg substitution ban appears to be an exaggerated response when the accommodation is already provided to some inmates on Common Fare for medical reasons and because the VDOC has already expended administrative costs to design the Hair Pod to accommodate, inter alia, Rastafarian inmates' religious beliefs.

Gregg does not address why her egg policy may disproportionately affect Rastafarians on Common Fare versus similarly-situated inmates on Common Fare. For example, Gregg does not explain why she was able to design a menu to serve non-pork foods to Jewish and Muslim inmates but not egg-free foods to Rastafarians who are already approved for Common Fare.

Gregg also does not explain why egg substitute cannot be extended to Rastafarians on Common Fare when egg substitute is already extended to inmates on Common Fare who are allergic to egg. Ostensibly, Gregg had been able to accommodate Rastafarians' egg-free diet

under the "Rastafarian Diet." Yet, Plaintiff alleges that Rastafarians have been unfairly targeted because the "Rastafarian Diet" had been the only menu ever discontinued by the VDOC.

Accordingly, the state defendants' motion for summary judgment is denied as to the egg substitute claims against Gregg under the Cruel and Unusual Punishments Clause, RLUIPA, the Free Exercise Clause, and the Equal Protection Clause.

**B.**

Plaintiff seeks to hold defendants Governor McAuliffe, Secretary Moran, Director Clarke, Deputy Director Robinson, and VDOC staff Stallard, Broyles, Stout, Belcher, Evans, Ferris, J. Collins, King, Anderson, S. Collins, Cooke, Byington, Rutherford, Caudill, and Carmony individually liable as supervisors. These defendants are entitled to qualified immunity and summary judgment in their individual capacities.

Supervisory liability under § 1983 may not be predicated on the theory of respondeat superior. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 663 n.7, 691-94 (1978); Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001). Plaintiff fails to describe a personal act or omission by Governor McAuliffe, Secretary Moran, Director Clarke, or VDOC staff Stallard, Broyles, Stout, Belcher, Evans, Ferris, Anderson, Byington, Rutherford, Caudill, and Carmony.

Plaintiff fails to establish supervisory liability under Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), for Robinson, Fleming, Combs, J. Collins, King, S. Collins, and Cooke. To establish supervisory liability under § 1983, a plaintiff must show that: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative

causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Shaw, supra. To satisfy the requirements of the first element, a plaintiff must establish: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff. Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984). Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions, and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury. Id. at 373-74. A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses." Id. at 373.

Although Robinson signed OP 864.1, Plaintiff has not alleged any pertinent facts involving Robinson with any of the claims. Plaintiff's conclusory allegation that Robinson should be liable is not sufficient under Shaw to make him liable in an individual capacity.

Plaintiff alleges that J. Collins, King, S. Collins, and Cooke do not make their subordinate correctional officers "do[]their job" to correct alleged discrepancies with food services. However, Plaintiff fails to link these defendants' personal conduct or another's conduct in execution of these defendants' policies or customs.[8] See, e.g., Shaw, 13 F.3d at 799. Instead, Plaintiff alleges that these defendants were merely negligent for failing to supervise their subordinates, but negligence and respondeat superior fall short of describing a claim actionable under § 1983. See, e.g., Hudson v. Palmer, 468 U.S. 517, 533 (1984); Parratt v. Taylor, 451 U.S.

---

[8] To the extent Plaintiff's allegations could be construed to mean that J. Collins, King, S. Collins, and Cooke do not "do[]their job" to correct alleged discrepancies with food services, he has failed to explain how these defendants are individually liable beyond this conclusory allegation.

17

527, 538-39 (1981), overruled in irrelevant part by Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Monell, 436 U.S. at 663 n.7, 691-94.

## C.

Plaintiff seeks to hold defendants Ravizee, Fleming, Combs, and Elam individually liable due to their obligations to review grievances. Plaintiff argues that Ravizee, Fleming, Combs, Elam, and Bivens "turned a blind eye" to the alleged wrongdoing based on their responses to various grievances.

"The First Amendment protects the right to petition the Government for a redress of grievances, and the Supreme Court has recognized that prisoners retain this constitutional right while they are incarcerated." Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (internal quotation marks and citations omitted). However, the Constitution does not create an "entitlement to grievance procedures or access to any such procedure." Adams v. Rice, 40 F.3d 75 (4th Cir. 1994). Thus, "[a]n inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process . . . ." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017). Even after considering their grievance responses, Plaintiff fails to establish that Ravizee, Fleming, Combs, Elam, or Bivens were personally involved in any alleged violation of federal rights, either directly or through another's conduct in execution of their policies or customs. See Shaw, 13 F.3d at 799. Allegations of negligent investigation or respondeat superior are not sufficient. See id. Accordingly, Ravizee, Fleming, Combs, Elam, and Bivens are entitled to qualified immunity and summary judgment in their individual capacities.

## VI.

The state defendants are entitled to summary judgment as to damages sought for the RLUIPA claims. RLUIPA does not authorize damages against a public official. See Sossamon

18

v. Texas, 563 U.S. 277, 282 n.1, 293 (2011) (prohibiting damages claims against state officials in their official capacity); Rendelman v. Rouse, 569 F.3d 182, 189 (4th Cir. 2009) (same for individual capacity); see also Washington v. Gonyea, 731 F.3d 143, 146 (2d Cir. 2013) (discussing the construction of RLUIPA). Accordingly, Plaintiff cannot recover damages under RLUIPA.

## VII.

Plaintiff seeks several changes to VDOC operations via equitable relief against the state defendants in their official capacities. First, Clarke and Robinson should modify OP 864.1 because it forces Plaintiff to cut his hair and discriminates against him as a black male.[9] Second, Clarke and Robinson should eliminate OP 864.2,[10] and Fleming, Combs, J. Collins, Anderson, and King should "give [P]laintiff his fundamental privileges back."[11] Third, Gregg and Stallard, who is the Food Service Operations Director at WRSP, should authorize egg substitute, authorize appropriate quantities of foods, and forbid old, cold food to be served.

The court had not allowed discovery on these claims on account of the state defendants' assertion of qualified immunity. Now that qualified immunity has been resolved, the parties may conduct discovery for the next sixty days, and the state defendants shall file a motion for

---

[9] Plaintiff does not accurately describe which part of the OP he wants to modify. Plaintiff specifically challenges sections "C through J," but the citation is not helpful because neither Part IV nor Part V has a section J. Given the lack of clarity, the court will treat the argument as against both Part IV and Part V.

[10] While Plaintiff attacks OP 864.2 for its allegedly unlawful incentive levels and restrictions of privileges found in Phase I of the Hair Pod, it is not clear whether OP 864.2 currently exists. However, the challenged incentives and restrictions are specifically addressed in Part V and summarized in Attachment 2 of the current version of OP 864.1.

[11] Plaintiff challenges the following conditions of Phase I: not having a personal television in his cell like in Phase II; not participating in the SecurePak Program like in Phase II; not having the same recreation time as in Phase II and General Population; and the inability to buy up to $50 worth of commissary like in Phase II. Plaintiff also complains that Phase I inmates: may not have contact visitation; are confined in their solitary cells for approximately twenty-two hours per day; may not attend educational, vocational, or religious programs; and may not bring anything, including religious books or papers, from their cells into the pod. Plaintiff further complains that the television programming displayed to the entire Phase I pod is either educational or Christian programming, which purportedly violates the Establishment Clause of the First Amendment.

summary judgment within forty-five days thereafter.[12] Accordingly, the state defendants' motion for summary judgment is denied in part without prejudice as to the official capacity claims.

## VIII.

Finding it appropriate to do so, the court grants Witt's motion to adopt and incorporate the motion to dismiss filed by O'Quinn and Randolph, grants the Keefe defendants' motion to dismiss, grants in part and denies in part the state defendants' motion for summary judgment, allows discovery to be completed within the next sixty days, and directs the state defendants to file a motion for summary judgment within forty-five days thereafter.

**ENTER:** This _11th_ day of January, 2018.

/s/ Michael F. Urbanski
Chief United States District Judge

---

[12] The state defendants should also address the state law claims asserted under Article I of the Virginia Constitution that have not been reviewed in this opinion through the lens of qualified immunity. See, e.g., Estate of Vidal v. Vassey, No. 7:16-CV-19-FL, 2016 U.S. Dist. LEXIS 107523, at *9, 2016 WL 4288044, at *3 (E.D.N.C. Aug. 15, 2016) ("As an initial matter, 'qualified immunity' is a term used to describe a defense to a federal constitutional action under 42 U.S.C. § 1983, not state common law claims.").